Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edward A. Bobrick | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 8019 | **DATE** | 6/21/2001 |
| **CASE TITLE** | Doyle's Construction vs. Wendy's International, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 7/10/01 at 10:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Order. Defendants' motion for summary judgment is granted as to Counts I, III, and IV, and denied as to Count II.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 4 |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | JUN 22 2001 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING 01 JUN 21 AM 9:38 | |
| | Copy to judge/magistrate judge. | | 6/21/2001 date mailed notice |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | TH mailing deputy initials |

Document Number 72

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOYLE'S CONSTRUCTION & REMODELING, INC., an Illinois corporation, ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | No. 97 C 8019 |
| WENDY'S INTERNATIONAL, INC., an Ohio corporation, ) ) ) | Edward A. Bobrick, Magistrate Judge |
| Defendant. ) | |

DOCKETED
JUN 2 2 2001

## MEMORANDUM ORDER

Before the court is the motion of defendant Wendy's International, Inc. for summary judgment on the complaint of plaintiff Doyle's Construction & Remodeling, Inc.

## I. BACKGROUND

Plaintiff brings this action in four counts, alleging three claims that stem from contracts or alleged contracts to perform construction work, and one defamation claim. The plaintiff is a local construction firm; the defendant is a national fast food corporation. Plaintiff apparently completed some construction projects for defendant before the events or conversations leading to this litigation occurred. It is at this very early point in the story of these two parties that the narrative becomes more speculative. This matter highlights the rather obscure relationship – or lack thereof -- between the parties, involving – or not

involving – the construction or remodeling of twelve – or nine or fourteen – Wendy's restaurants. The court cannot be more specific because the record does not allow it.

If this sounds confusing, a thorough review of the record the parties have developed for summary judgment does little to explain what exactly occurred, or did not occur, as the parties disagree about nearly everything and, in their manner of doing business, failed to write much of anything down. There were apparently meetings and fleeting conversations and assumptions. There were apparently no details or agreements. Both sides took a rather lackadaisical attitude toward their businesses and now hope the courts will iron things out for them.

Essentially, plaintiff contends that the parties had an oral contract for the construction or remodeling of about twelve franchise sites, which defendant breached; while defendant claims no such thing ever happened, and moves for summary judgment. Plaintiff also seeks what it claims it is owed for work on two projects, storage of defendant's equipment, and recovery for a purported defamation. We will evaluate each count of plaintiff's complaint under the familiar summary judgment standard, and divine the facts as best we can from the rather convoluted record before us.

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(c). To ward off summary judgment by showing that there is a genuine dispute on a material fact, the non-moving party must do more than raise a "metaphysical doubt" as to the fact's existence. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1139 (7th Cir.1997). The non-moving party cannot merely allege the existence of a factual dispute. *McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000). That party must supply evidence sufficient to allow a jury to render a verdict in their favor. *Id.* In this case, both parties have filed the required Local Rule 56.1[1] submissions to support their memoranda. Unfortunately, the parties disagree as to much of whatever occurred between

---

[1] Rule 56.1(a) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local Rule 56.1(a)(3). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 56.1(b) then requires the opposing party to file among other items:
> a concise response to the movant's statement that shall contain:
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials.

Local Rule 56.1(b)(3). Rule 56.1(b) further provides that "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* The district court, with the approval of the Seventh Circuit, has long enforced the requirements of these rules. *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999) (discussing Local General Rule 12, the predecessor to Rule 56.1).

3

them. As a result, in most instances, we bypass these submissions and look to the record itself for enlightenment as to the facts of this case.

## B. Discussion

> We met at nine.          *We met at eight.*
> I was on time.           *No, you were late.*
>       Ah yes! I remember it well.
>
> We dined with friends.     *We dined alone.*
> A tenor sang.             *A baritone.*
>       Ah yes! I remember it well.
>
> –Lerner & Loew's "I Remember It Well"

We begin with a few of the facts that the parties remember both well, and without contradiction. Plaintiff's president and chief executive officer was Martin Doyle, and he ran the plaintiff's day-to-day operations. One of plaintiff's employees, Richard Esposito, was responsible for the development of the plaintiff's account with defendant. Defendant's contact with plaintiff was its director of engineering, Briggs Sellers. Between January of 1995 and September of 1996, the parties entered into six written contracts for remodeling franchises,[2] a written contract for the construction of a franchise in Aurora. The Aurora project was apparently "exchanged" for a project in Hazel Crest - the details on this transaction are scant - and this apparently was an oral contract. (*Defendant's Local Rule 56.1(b)(3) Statement*, ¶¶118-119). Then, there are the dozen sites that are the central issue

---

[2] Plaintiff claims these contracts were not signed until after work began, but the evidence cited does not establish this. (*Plaintiff's Response to Defendant's Local Rule 56.1 Statement*, ¶ 105).

4

here, all of which, purportedly, were subject to oral agreement. This is where things become hazy.

## 1. Breach of Contract Claim

In the claim that appears central to this litigation, plaintiff seeks recovery for breach of oral contract relating to twelve construction sites in Count III of its complaint. The trouble here, as will become apparent, is that the terms of this alleged oral agreement–from when it was made to what it involved--are not clear. It would seem that the parties had some sort of agreement in mind, but what it was or whether it was finalized is simply not apparent or ascertainable. Defendant moves for summary judgment on this claim, arguing that no oral contract as to the sites at issue was ever formed, and that even if it were, such a contract would be unenforceable under the statute of frauds as it would not have been performed within one year from its making.

We begin with the statute of frauds issue. In its complaint, plaintiff alleged that "pursuant to an ongoing verbal contractual relationship, [it] was hired to construct, remodel or rehabilitate twelve (12) stores commencing in January, 1995." (*Complaint*, at one, ¶ 3). Plaintiff also specifically alleged that pursuant to this "ongoing verbal relationship," the defendant committed "twelve (12) projects to the plaintiff to be completed in a timely fashion from 1995 to 1997." (*Id.*, at 4, ¶ 5).

In an affidavit filed in July of 1998, Mr. Doyle corrected his assessment as to the duration of the contract, stating that there was a single oral contract, formed in October

5

of 1995, to remodel or construct twelve stores. (*Defendant's Exhibit* 15, *Affidavit of Martin Doyle*, ¶¶ 2, 4). Mr. Doyle also claimed therein that Wendy's indicated that each store would take two or three weeks to complete, that plaintiff would work on two stores at a time, and that the entire project would be completed by March of 1996. (*Id.*, ¶¶ 3-4). Finally, he stated that defendant requested extensions of time that took the project up to December of 1996. (*Id.*, ¶ 5).

Mr. Doyle was then deposed in November of 1999. At that time, he was unsure when the oral agreement was reached. The only point of which he seemed sure is that it was negotiated at a Bears game among himself, Esposito, Sellers, and three others. (*Id.* at 41-44, 66). He testified:

Q: When was the Bears game?

A: I'd have to look it up but the Bears played Pittsburgh.

Q: What year?

A: 1995.

Q: So it was at a Bears game, it was in 1995 when the Bears played Pittsburgh at Soldier Field?

A: Yes, and it was either December of '94–it must have been December of '94, and we started receiving the equipment–No, it would have been November/December of '94 that was the Bears game. We started receiving the equipment somewhere in '94 and 95.

\* \* \*

Q: '94 was the Bears game?

6

A: Yes.

(*Id.* at 43-44). He also thought the oral contract began in January of 1995. (*Id.* at 76).

As for the duration of the contract, Doyle testified that work would start within a month or two after the agreement and continue for a year or a year and a half. (*Id.* at 44). He also testified that he assumed work began on the contract in October or November of 1995. (*Id.* at 61). At another point, he indicated that, if everything went as expected, the twelve projects would take 72 weeks to complete. (*Id.* at 76). Thus, at various times throughout his deposition testimony, Doyle gauged the duration of the oral contract upon which plaintiff bases its complaint as ranging from about fourteen months to two years.

In order to avoid a statute of frauds defense, in its response to defendant's statement of facts, plaintiff contends "that each restaurant project was always viewed as a separate contract with [defendant]." (*Plaintiff's Response to Defendant's Local Rule 56.1(b)(3) Statement*, ¶¶ 54, *et seq.*). Plaintiff, however, provides no citation to the record to support this contention. Indeed, throughout his deposition testimony, Doyle echoes the claim he originally brought in the complaint, discussing the oral agreement as a single contract:

> Q: How long did this ongoing verbal relationship last?
>
> A: It started in January of '95, and it was still being practiced on the day we were terminated in December of '96.
>
> * * *
>
> Q: You're alleging . . . on one count involving this oral contract to construct and remodel 12 restaurants, okay?

7

A: Yes.

Q: Okay. Now the 12 restaurants I understand are identified in your Answers to interrogatories, is that correct?

A: The Answers to the Interrogatories contain the 12, and the other ones that were added as the ongoing verbal contract continued.

* * *

Q: Okay. You said in January or in 1995 Doyle's entered into an oral contract with Wendy's to remodel 12 Wendy's restaurants, is that correct?

A: Correct.

(*Dep. of Martin Doyle*, at 76-78).

Now, in its memorandum of law in opposition to defendant's motion for summary judgment, plaintiff argues that "[defendant] and [plaintiff] did not agree to a single contract for nine remodels but entered into nine separate contracts for each of the nine restaurants." (*Plaintiff's Memorandum in Opposition*, at 18). This contradicts the Doyle affidavit and deposition testimony, to say nothing of the fact that it introduces the assertion that there were nine projects as opposed to twelve or yet another figure.[3]

It is well-settled that a plaintiff cannot manufacture an issue of fact to avoid summary judgment with contradictions in his own testimony, affidavits, or allegations. *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532 (7th Cir. 1999). Indeed, when there are conflicts between a plaintiff's sworn deposition testimony and his affidavit, the

---

[3] At various points in the record, Doyle seems to suggest that the oral agreement covered as many as fourteen sites (*Doyle Dep.*, at 80), or as few as eight. (*Plaintiff's Exhibits*, Ex. 88, ¶ 45).

8

deposition testimony prevails. *Id.* Thus, we need not deal with the contradictions raised in plaintiff's affidavits, and will focus instead on plaintiff's deposition testimony. If that testimony could be considered consistent in any respect, it was in the respect that the projects at issue could *not* be completed within a year of the date the alleged oral contract was made. Thus, when all plaintiff's conflicting assertions are distilled down to their essence, it is apparent that the oral contract upon which plaintiff sues is unenforceable under the statute of frauds.

The Illinois statute of frauds precludes enforcement of oral contracts that cannot be performed within a year of their making. 740 ILCS 80/1; *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 489, 680 N.E.2d 1347, 1351 (1997). As the *McInerney* court explained:

> The period of one year, although arbitrary, recognizes that with the passage of time evidence becomes stale and memories fade. The statute proceeds from the legislature's sound conclusion that while the technical elements of a contract may exist, certain contracts should not be enforced absent a writing. It functions more as an evidentiary safeguard than as a substantive rule of contract. As such, the statute exists to protect not just the parties to a contract, but also--perhaps more importantly--to protect the fact finder from charlatans, perjurers and the problems of proof accompanying oral contracts.

*Id.* While we certainly do not regard Mr. Doyle as a charlatan or perjurer, his inability to settle on any of the terms of the contract he seeks to enforce certainly highlights the "problems of proof accompanying oral contracts."[4] While the plaintiff might have been

---
[4] As already noted, at various points in the record, plaintiff has asserted the oral
(continued...)

9

comfortable with proceeding somewhat informally in its dealings with defendant, it cannot later expect the court to complete the negotiation process and arrive at terms on its behalf. *J.F. McKinney & Assoc. v. General Electric Inv.*, 183 F.3d 619, 622 (7th Cir. 1999). The statute of frauds serves its purpose here. Accordingly, we must find that summary judgment in the defendant's favor is appropriate as to Count III of plaintiff's complaint.

## 2. Balance Due on Aurora and Hazel Crest Sites

Under Count I of its complaint, plaintiff alleges that at the time defendant terminated construction contracts for two sites–Aurora and Hazel Crest–defendant owed plaintiff $283,000 for work completed. Of that amount, the defendant apparently paid $185,000, leaving a balance of $98,000 on the total.[5] Defendant contends that the payment

---

[4](...continued)
        contract covered various numbers of locations: fourteen (*Doyle Dep.* at 80); thirteen (*Defendant's Exhibit* 16, at 7-11); twelve (*Complaint*, at 1, ¶ 3; at 4, ¶5); eight (*Plaintiff's Exhibits*, Ex. 88, ¶ 45). There was apparently no agreement as to price, as Doyle assumed it would be based on the scope of work (*Doyle Dep.* at 54-55), which Doyle stated he thought would be the same or larger than previous jobs (*Id.* at 55) although he did not recall the scope of the previous jobs. (*Id.* at 46). He said price was finalized and then approved by him, but there is apparently no record of him doing that. (*Id.* at 70-71). In the plaintiff's memorandum, it argues that prices were reflected in bids, which were accepted when defendant shipped materials to plaintiff; otherwise, prices were based on mutual understanding. (*Plaintiff's Memorandum in Opposition*, at 11-12). In fact, when asked whether defendant approved the contract as to any of the twelve sites, Doyle testified that he did not know, but assumed if plaintiff "were getting equipment, something must have been approved." (*Doyle Dep.* at 48).

[5]    Like much of this case, there is some discrepancy as to whether defendant paid $186,000 -- as plaintiff alleged in the complaint (*Complaint*, at 3, ¶ 7) -- or $185,000 -- as Doyle testified at his deposition. (*Defendant's Exhibit 12, Doyle Deposition*, at 342).

was in full settlement of the outstanding balance on the two projects. Not surprisingly in this case, there is no written settlement agreement to that effect.

The record before the court on this issue consists of Doyle's deposition testimony, the affidavit of Harry Sherowski, defendant's vice president of engineering, and a letter from plaintiff to defendant discussing settlement negotiations, which includes several handwritten "jottings." The parties agree that, after defendant terminated the Aurora and Hazel Crest contracts, plaintiff filed original contractor's liens on the two projects in the amounts of $13,699.95 and $352,984.32, respectively, on February 5, 1997. (*Defendant's Exhibits*, Ex. 29). On June 26, 1997, there was a meeting among Sherowski, Doyle, and three other of defendant's representative including in-house counsel, to discuss settlement. At that meeting, Sherowski claims he offered Doyle $175,000 to settle claims on both projects. In his affidavit, plaintiff states that the offer was for release of subcontractor's liens only. (*Plaintiff's Exhibits*, Ex. 88, ¶ 77). Plaintiff's deposition testimony is far less certain:

> Q: On June 26[th], Wendy's, had they offered to pay you $175,000 for the Aurora and Hazel Crest projects?
>
> A: I think it was.
>
> Q: So then you sent this letter to Wendy's . . . and you stated that you were willing to accept 191,000 to cover the . . .seven month's interest and other expenses for all work to date; is that correct?
>
> A: Yes.

> Q: And that you were going to pay the subcontractors that are listed and then whatever is left over will go to you?
>
> A: Yes.

(*Defendant's Exhibits*, Ex. 12, *Deposition of Martin J. Doyle ("Doyle Dep.")*, at 337-38).

The letter to which the testimony refers provides, in pertinent part:

> On June 26, 1997 [defendant] offered to pay [plaintiff] $175,000.00 for Aurora, IL and Hazel Crest, IL projects.
>
> [Plaintiff] is willing to accept $191,000.00 to cover the above, 7 months interest and other expenses for all work to date. If approved, for $191,000.00 the four subcontractors who filed liens will release liens providing that the checks are available for distribution on July 7, 1997.
>
> The following amounts are for each subcontractor:
>
> | | |
> |---|---|
> | 1. Area Blacktop | $19,500.00 |
> | 2. Bachstein Construction | $16,003.32 |
> | 3. Harrington Excavating | $21,192.80 |
> | 4. Indoor Plumbing | $ 8,573.95 |

(*Defendant's Exhibits*, Ex. 30). Upon receipt of the letter by facsimile, Sherowski and Doyle spoke over the phone and came up with a total amount of $185,000. (*Defendant's Exhibits,* Ex. 10, ¶ 10; *Doyle Dep.* at 338). Thereafter, defendant issued checks in the requested amounts to the four subcontractors, and made out a check to plaintiff $119,729.93, for a total of approximately the $185,000 discussed. These checks were cashed and all liens were released. (*Doyle Dep.*, at 342).

Defendant seeks summary judgment on plaintiff's claim for the contract balance of $98,000 on a theory of accord and satisfaction. To constitute an accord and satisfaction, there must be (1) an honest dispute between the parties as to an amount owed between them; (2) a tender of payment with the explicit understanding of both parties that it is in full payment of all demands; and (3) an acceptance of the payment by the creditor with the understanding that it is accepted as full payment. *Koules v. Euro-American Arbitrage, Inc*, 293 Ill.App.3d 823, 830, 689 N.E.2d 411, 415 (2nd Dist.1998). If there is an honest dispute as to an amount owed and due, and the debtor tenders a check with the explicit understanding that it is full payment of all demands, the creditor's acceptance and negotiation of the check is an accord and satisfaction. *Id.* The partial payment of a fixed and certain demand that is due and not in dispute, however, does not constitute a satisfaction of the entire debt even if the creditor agrees to receive a partial payment for the whole debt and gives a receipt for the whole demand. *Id.*

In this case, plaintiff does not argue against the application of accord and satisfaction. Instead, in its brief, plaintiff chooses to discuss whether a release was executed. These are two different things: an accord and satisfaction is a contractual method of discharging a debt or claim by some performance other than that which was originally due; a release is a contract whereby a party abandons a claim or relinquishes a right that could be asserted against another. *Koules,* 293 Ill.App.3d at 829, 689 N.E.2d at 414. There is no doubt here, for example, that plaintiff released its lien. While plaintiff

does not dispute that there was accord and satisfaction, however, we must consider whether defendant has demonstrated its elements for the purposes of summary judgment

The record indicates that there was an honest dispute as to the amount owed. Defendant expressed dissatisfaction with the work at the two sites and terminated the contract; plaintiff disagreed with the assessment and continued to seek the full amount due. There was definitely a tender and acceptance of payment–the question is what that meant to the parties. Doyle admits that they met to discuss settlement, and that defendant offered $175,000. He testified, and wrote, that he would accept $191,000 to cover the two projects, interest, and expenses to date. There is no dispute that the figure was then negotiated to $185,000. The checks were issued as Doyle requested and he cashed the one made out to plaintiff. Although Doyle claims that "[t]he settlement reached was only for Wendy's to pay an amount so that the subcontractors would be paid and in return the subcontractor's liens would be released." (*Plaintiff's Exhibits*, Ex. 88, ¶ 75), that explanation would make sense if the amount agreed upon were equal to the subcontractor's claims, but it was about $120,000 more. Basically, plaintiff does not mount an argument against accord and satisfaction, and offers no explanation of what the transaction between the parties constituted if not an accord and satisfaction. Accordingly, we find summary judgment in favor of defendant is appropriate as to Count I.

### 3. Equipment Storage

Under Count II of its complaint, plaintiff seeks recovery under *quantum meruit* for storage of certain materials purportedly earmarked for the twelve projects at issue. Defendant does not deny that it shipped the equipment to plaintiff's facilities and later had it recovered by a third party on its behalf. *(See, generally, Motion for Summary Judgment,* at 24; *Reply in Support of Motion for Summary Judgment,* at 15). Instead, defendant argues that there can be no recovery under *quantum meruit* in this case, quoting *North American Financial Group v. S.M.R. Enterprises, Inc.* 583 F.Supp. 691, 700 (N.D.Ill. 1984) for the proposition that: "[w]here preliminary services are conferred for business reasons, without the anticipation that reimbursement will *directly* result, but rather, with the expectation of obtaining a hoped-for contract and incidental to continuing negotiations related thereto, quasi contractual relief is unwarranted." *(Reply in Support of Motion for Summary Judgment,* at 15). Defendant fails to support this argument with any facts demonstrating that plaintiff received the materials as part of any ongoing negotiations. Indeed, it denied such a characterization in its answer to plaintiff's complaint. *(Defendant's Exhibits,* Ex. 3, at 5, ¶ 7). Defendant vehemently stresses, of course, that shipment of materials is no indication that it has a contract with plaintiff. What defendant is not vehement about, however, is why it would ship materials to a builder with whom it has no contract and assume it would receive free storage for those materials. The testimony

15

of defendant's employees on this question is reminiscent of Doyle's testimony. For example, Briggs Sellers explained:

> Q: Do you know . . .about the agreements to store materials with Doyle's, between Doyle's and Wendy's.
>
> A: While I was there Wendy's made no agreements.
>
> * * *
>
> The only equipment that should–that they should have had in their hands would have been for jobs that they were doing, correct.
>
> * * *
>
> Q: Okay. So if Doyle's Construction had equipment for project that was cancelled, why would they have that equipment if there was no contract entered into between Doyle's and Wendy's?
>
> A: It would have been shipped there – I mean they shouldn't have, number one, but most likely one of the construction managers was getting equipment on hand early on. And then the project gets cancelled and then have to do something with the equipment, move it somewhere else, which is exactly why we never wanted to store equipment anywhere other than with our vendors.

(*Defendant's Exhibits*, Ex. 7, at 58-60). So, defendant did not normally store materials with contractors, it should not have done it, it did not want to do it. Jurij Ozga, defendant's construction manager, also testified as to why defendant shipped equipment to plaintiff:

> When I was involved with the remodels, the equipment was delivered to [defendant's] warehouse. What triggered that? Why was it set up? I really don't know. It was already–I assume it was–in the essence, I inherited that process. So if it was delivered to [defendant]–because that's how it was done. I just–I just came in at a certain point of this project, so –

16

(*Defendant's Exhibits*, Ex. 6, at 67-68). The testimony does not answer the simple question, however, of *why* defendant did ship and store materials with plaintiff in this case. As a result, defendant certainly cannot contend that the storage was part of the negotiation of a contract with plaintiff, and cannot succeed on its rather cursory argument against plaintiff's claim for *quantum meruit*. Summary judgment is inappropriate on this count.

### 4. Defamation

In Count IV of its complaint, plaintiff alleges that defendant defamed it in a letter criticizing its work. Dated December 4, 1996, the letter terminated plaintiff from projects in Downers Grove, Darien, and Hazel Crest. The reasons for the termination were improperly installed paneling, poor quality of trim, improperly grouted tile, communication problems with store operators, missed deadlines, and an injury to a store manager due to an unsafe stainless steel corner. (*Complaint*, Ex. A). Plaintiff alleges this letter was distributed to "numerous other persons in the public domain." (*Complaint*, at 6, ¶5). Plaintiff characterizes this as defamation *per se*, in that the letter purportedly imputes a lack of ability in plaintiff's trade, profession, or business.

Damages are presumed when a statement is defamatory *per se*. *Kirchner v. Greene*, 294 Ill.App.3d 672, 679, 691 N.E.2d 107, 114 (1st Dist. 1998). Even statements that constitute defamation *per se*, however are not actionable where they are reasonably capable of an innocent construction. *Id.* Illinois courts apply a modified version of the

17

innocent construction rule[6], which provides "that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.*" *Chapski v. Copley Press*, 92 Ill.2d 344, 352, 442 N.E.2d 195 (1982). "It is self-evident that a statement 'reasonably' capable of a nondefamatory interpretation, given its verbal or literary context, should be so interpreted." *Mittelman v. Witous*, 135 Ill. 2d 220, 232, 552 N.E.2d 973 (1989). "The rigorous standard of the modified innocent construction rule favors defendants in *per se* actions in that a nondefamatory interpretation must be adopted if it is reasonable. The tougher standard is warranted because of the presumption of damages in per se actions." *Mittelman*, 135 Ill.2d at 234, 552 N.E.2d 973. Whether a statement may reasonably be innocently interpreted is a question of law to be resolved by the court. *Chapski*, 92 Ill.2d at 352, 442 N.E.2d 195.

---

[6] Illinois adopts the minority rule of the innocent construction rule. Under the majority rule, the judge decides whether the language is reasonably susceptible of a defamatory interpretation; and if it is, the case goes to the jury despite any conceivable innocent interpretation, to determine whether in fact the publication was understood to be defamatory or to refer to the plaintiff. In contrast, the Illinois rule, or the minority rule, prevents a case from getting to the jury if there is any possible reasonable innocent interpretation of the language. *Chicago City Day School v. Wade*, 297 Ill.App.3d 465, 471, 697 N.E.2d 389, 394 (1st Dist. 1998).

The letter at issue here was simply a letter in which defendant terminated plaintiff and explained why, stating its dissatisfaction with specific aspects of certain projects. Taken in context, this is an employer making an assessment of plaintiff's performance in a particular job setting, not a comment on a plaintiff's general inability to perform its trade. *See, Anderson v. Vanden Dorpel,* 172 Ill.App.3d 399, 413, 667 N.E.2d 1296, 1302 (1996). As such, it may be innocently construed and may not form the basis for a *per se* action. *Id. See also Valentine v. North American Co. for Life & Health Ins.*, 60 Ill.2d 168, 328 N.E.2d 265 (1974)(statement that plaintiff was a "lousy agent" capable of construction regarding that particular relationship and did not necessarily imply plaintiff's lack of skills in his calling). Accordingly, summary judgment for defendant is appropriate on Count IV.

### III. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED as to Counts I, III, and IV, and DENIED as to Count II.

ENTERED: *[signature: Edward A. Bobrick]*

**EDWARD A. BOBRICK**

**U.S. MAGISTRATE JUDGE**

**DATE:** June 21, 2001